IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 04–cv–01683–EWN–PAC

CLOYDE LEWIS,

      Plaintiff,

v.

RITE OF PASSAGE, INC.,

      Defendant.

---

## ORDER AND MEMORANDUM OF DECISION

---

      This is an employment discrimination case. Plaintiff Cloyde Lewis alleges that his former employer, Ridge View Youth Service Center ("Ridge View"), which is operated by Defendant Rite of Passage, Inc., discriminated against him in violation of the Uniformed Services Employment and Re-employment Rights Act ("USERRA"), 38 U.S.C.A. § 4301 *et seq.* (2005), and violated his rights to due process under 42 U.S.C.A. § 1983 (2005) ("section 1983") when it terminated his employment. This matter is before the court on "Defendant's Motion for Summary Judgment on 42 U.S.C. § 1983 Claim," filed March 18, 2005, and "Defendant's Motion for Summary Judgment on All Claims, and Alternatively, To Limit Damages," filed April 13, 2005. Jurisdiction is premised upon 28 U.S.C.A. § 1331 (2005) and 38 U.S.C.A. § 4323 (2005).

## FACTS

### 1.    *Factual Background*

Plaintiff worked for Defendant in the Medical Department at Ridge View, a youth services center and school, from June 2002 through September 2002 and from June 2003 through March 2004. (Def.'s Mot. for Summ. J. on 42 U.S.C. § 1983 Claim, Statement of Procedural and Uncontested Facts ¶ 5 [filed Mar. 18, 2005] [hereinafter "Def.'s 1st Br."]; *admitted at* Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. on 42 U.S.C. § 1983 Claim, Resp. to Statement of Undisputed Facts ¶ 5 [filed Apr. 20, 2005] [hereinafter "Pl.'s 1st Resp."].)  At all relevant times during his employment with Defendant, Plaintiff was a member of the United States Air Force Reserve and was assigned to and served with the 302nd Airlift Wing, an Air Force Reserve unit located at Peterson Air Force Base in Colorado Springs, Colorado.  (Am. Compl. and Jury Demand ¶ 8 [filed Feb. 15, 2005] [hereinafter "Am. Compl."].)  Defendant is a private corporation that operates Ridge View under contract with the Division of Youth Services for the State of Colorado.  (Def.'s 1st Br., Statement of Procedural and Uncontested Facts ¶ 23, Ex. T at 7–12 [Dep. of Kent Moe]; *admitted at* Pl.'s 1st Resp., Resp. to Statement of Undisputed Facts ¶ 23.)  Ridge View is owned by the State of Colorado and has a charter with the Denver public school district.  (*Id.*)  Students at Ridge View are committed to the Division of Youth Corrections through the judicial process before being referred to Ridge View.  (Pl.'s 1st Resp., Statement of Additional Disputed Facts ¶ 3; *admitted at* Def.'s Reply Br. in Supp. of Mot. for Summ. J. on 42 U.S.C. § 1983 Claim, Resp. Concerning Disputed Facts ¶ 3 [filed May 5, 2005] [hereinafter "Def.'s 1st Reply"].)

On May 29, 2002, Plaintiff signed an application for employment, which contained a disclaimer in bold type and capital letters stating that: (1) neither the application nor subsequent employment served to create an employment contract, and (2) if hired, Plaintiff would be an at-

will employee. (Def.'s 1st Br., Statement of Procedural and Uncontested Facts ¶ 6, Ex. A [Employment Application]; *admitted at* Pl.'s 1st Resp., Resp. to Statement of Undisputed Facts ¶ 6.) The application also stated that "any false information or omission may disqualify [applicant] from further consideration for employment and may result in [applicant's] dismissal if discovered at a later date. (Def.'s Mot. for Summ. J. on All Claims, and Alternatively, To Limit Damages, Statement of Procedural and Uncontested Facts ¶ 6, Ex. A [Employment Application] [filed April 18, 2005] [hereinafter "Def.'s 2d Br."]; *admitted at* Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. on All Claims, and Alternatively, To Limit Damages, Resp. to Statement of Undisputed Facts ¶ 6 [filed May 11, 2005] [hereinafter "Pl.'s 2d Resp."].) Plaintiff stated on his application that the reasons he left his prior employment with Denver Health and Hospitals were "military obligation, want to manage." (*Id.*, Statement of Procedural and Uncontested Facts ¶ 7, Ex. A [Employment Application]; *admitted at* Pl.'s 2d Resp., Resp. to Statement of Undisputed Facts ¶ 7.) On his application, Plaintiff responded affirmatively to Defendant's question whether he had previously been involuntarily discharged from a job. (*Id.*, Statement of Procedural and Uncontested Facts ¶ 8, Ex. A [Employment Application]; *admitted at* Pl.'s 2d Resp., Resp. to Statement of Undisputed Facts ¶ 8.) Plaintiff's entire explanation for his involuntary dismissal was "[a]fter returning from military duty out of state." (*Id.*) In actuality, Denver Health and Hospitals terminated Plaintiff for cause. (*Id.*, Statement of Procedural and Uncontested Facts ¶ 9; *admitted at* Pl.'s 2d Resp., Resp. to Statement of Undisputed Facts ¶ 9.) Plaintiff challenged his dismissal, and a hearing officer for the career service board for the State of Colorado upheld the dismissal and Denver Health and Hospitals' reasons therefor, which included: (1) "[g]ross negligence of willful neglect of duty;" (2) theft, destruction, or gross negligence in the use of city

and county property; (3) refusing to comply with the orders of an authorized supervisor or refusing to perform assigned work of which Plaintiff was capable of performing; and (4) divulging confidential information from official records to unauthorized individuals.  (*Id.*, Statement of Procedural and Uncontested Facts ¶ 10, Ex. E [Career Service Board Order]; *admitted at* Pl.'s 2d Resp., Resp. to Statement of Undisputed Facts ¶ 10.)  Debi Westmoreland, Defendant's director of human resources during the time period pertinent to the instant case, testified that had she known of the circumstances surrounding Plaintiff's dismissal from Denver Health and Hospitals, she would not have hired Plaintiff.  (*Id.*, Statement of Procedural and Uncontested Facts ¶ 11, Ex. F at 22–23 [Dep. of Debi Westmoreland]; *admitted at* Pl.'s 2d Resp., Resp. to Statement of Undisputed Facts ¶ 11.)

On May 30, 2002, Plaintiff signed an acknowledgment of receipt of Defendant's employee handbook, which contained a disclaimer stating that Defendant's employment would be at-will. (Def.'s 1st Br., Statement of Procedural and Uncontested Facts ¶ 7, Ex. B [Employee Handbook Acknowledgment]; *admitted at* Pl.'s 1st Resp., Resp. to Statement of Undisputed Facts ¶ 7.) Plaintiff admits that he signed the acknowledgment, but denies that he received a copy of the handbook in 2002.  (Pl.'s 1st Resp., Resp. to Statement of Undisputed Facts ¶ 7; Def.'s 1st Br., Ex. C at 59 [Dep. of Cloyde Lewis].)

On September 4, 2003, Plaintiff received a "procedure reminder" — a form of written discipline — for lateness.  (Def.'s 1st Br., Statement of Procedural and Uncontested Facts ¶ 8, Ex. D [9/4/03 Procedure Reminder]; *admitted at* Pl.'s 1st Resp., Resp. to Statement of Undisputed Facts ¶ 8.)  On September 29, 2003, Plaintiff received a second "procedure reminder" for failing to help bring students to a certain location so that the students could receive medical

care.  (*Id.*, Statement of Procedural and Uncontested Facts ¶ 9, Ex. E [9/29/03 Procedure

Reminder]; *admitted at* Pl.'s 1st Resp., Resp. to Statement of Undisputed Facts ¶ 9.)  Plaintiff did

not sign the September 29, 2003 "procedure reminder."  (*Id.*, Statement of Procedural and

Uncontested Facts ¶ 9, Ex. E [9/29/03 Procedure Reminder].)  On October 2, 2003, Plaintiff

received a "written reprimand" for his refusal to sign the September 29, 2003 "procedure

reminder."  (*Id.*, Statement of Procedural and Uncontested Facts ¶ 10, Ex. F [10/2/03 Written

Reprimand]; *admitted at* Pl.'s 1st Resp., Resp. to Statement of Undisputed Facts ¶ 10.)  On

October 22, 2003, Plaintiff received a third "procedure reminder" for reporting to work late on

three separate occasions.  (*Id.*, Statement of Procedural and Uncontested Facts ¶ 11, Ex. G

[10/22/03 Procedure Reminder]; *admitted at* Pl.'s 1st Resp., Resp. to Statement of Undisputed

Facts ¶ 11.)

On February 28, 2004, Plaintiff received notice that he was required to attend and serve a

"drill weekend" with his Air Force Reserve unit during the weekend from March 5, 2005 through

March 7, 2005.  (Am. Compl. ¶ 10.)  Plaintiff did not have written orders reflecting his obligation.

(Def.'s 1st Br., Statement of Procedural and Uncontested Facts ¶ 16; *admitted at* Pl.'s 1st Resp.,

Resp. to Statement of Undisputed Facts ¶ 16.)  On March 2, 2004, Plaintiff informed his

supervisor, Paul Brylewski, that he would be absent from work on March 5, 2005 due to his Air

Force Reserve commitment.  (*Id.*, Statement of Procedural and Uncontested Facts ¶ 15; *admitted

at* Pl.'s 1st Resp., Resp. to Statement of Undisputed Facts ¶ 15.)  Brylewski asked Plaintiff to

provide him with the name and phone number of his Air Force Reserve supervisor.  (*Id.*,

Statement of Procedural and Uncontested Facts ¶ 16; *admitted at* Pl.'s 1st Resp., Resp. to

Statement of Undisputed Facts ¶ 16.)  Plaintiff refused to provide Brylewski with the requested

information.  (*Id.*)

On March 3, 2004, Plaintiff documented administration of Vicodin, a controlled narcotic substance, to two students on an over-the-counter medication administration log.  (*Id.*, Statement of Procedural and Uncontested Facts ¶ 12; *admitted at* Pl.'s 1st Resp., Resp. to Statement of Undisputed Facts ¶ 12.)  Defendant maintains that Plaintiff should have documented the administration on Defendant's controlled substance log.[1]  (*Id.*, Statement of Procedural and Uncontested Facts ¶ 12, Ex. I at13–24 [Dep. of Sandra McEwen], Ex. J at 41 [Dep. of Michael Rudnick]; *deemed admitted at* Pl.'s 1st Resp., Resp. to Statement of Undisputed Facts ¶ 12.) Defendant asserts, and Plaintiff denies, that Sandra McEwen, a licenced practical nurse for Defendant, notified Plaintiff of the required procedure and the importance of documenting narcotics in the controlled substance log.  (*Id.*, Statement of Procedural and Uncontested Facts ¶ 13, Ex. I at 13–17 [Dep. of Sandra McEwen]; *denied at* Pl.'s 1st Resp., Resp. to Statement of Undisputed Facts ¶ 13, Ex. 4 at 172 [Dep. of Cloyde Lewis].)

On March 3, 2004 Brylewski noted that Plaintiff was approximately forty minutes late for work.  (*Id.*, Statement of Procedural and Uncontested Facts ¶ 18; *admitted at* Pl.'s 1st Resp., Resp. to Statement of Undisputed Facts ¶ 18.)  Plaintiff indicated on his time sheet that he arrived at work at 1:00 p.m. on March 3, 2004.  (*Id.*, Statement of Procedural and Uncontested Facts ¶ 18, Ex. O [Time Sheet]; *admitted at* Pl.'s 1st Resp., Resp. to Statement of Undisputed Facts ¶

_____

[1]Plaintiff contends that Defendant's employees testified recording the administration of Vicodin in the over-the-counter log was not problematic. (Pl.'s 1st Resp., Resp. to Statement of Undisputed Facts ¶ 12, Ex. 4 at 41 [Dep. of Michael Rudnick], Ex. 5 at 54 [Dep. of Paul Brylewski].)  Defendant's employees did so testify, but also testified that Plaintiff's failure to record the administration of Vicodin on the controlled substance log was problematic.  (*Id.*, Ex. 4 at 41 [Dep. of Michael Rudnick], Ex. 5 at 54 [Dep. of Paul Brylewski]; Pl.'s 2d Resp., Ex. 11 at 53 [Dep. of Michael Rudnick].)  Accordingly, I deem Defendant's statement admitted.

18.)  The key roster, which documents the time Defendant's employees report to work, indicated that Plaintiff arrived at work at 1:41 p.m. on March 3, 2004.  (*Id.*, Statement of Procedural and Uncontested Facts ¶ 18, Ex. P [Key Roster]; *admitted at* Pl.'s 1st Resp., Resp. to Statement of Undisputed Facts ¶ 18.)

On March 5, 2004, Plaintiff took leave for the weekend in order to attend the Air Force Reserve drill weekend.  (*Id.*, Statement of Procedural and Uncontested Facts ¶ 17; *admitted at* Pl.'s 1st Resp., Resp. to Statement of Undisputed Facts ¶ 17.)  On Monday, March 8, 2004, Plaintiff returned to work.  (Am. Compl. ¶ 15.)  On the same date, Plaintiff met with Brylewski and Kent Moe, director of student services.  (Def.'s 2d Br., Statement of Procedural and Uncontested Facts ¶ 26; *admitted at* Pl.'s 2d Resp., Resp. to Statement of Undisputed Facts ¶ 26.)  During the course of the meeting, Plaintiff received three disciplinary warnings: (1) a "procedure reminder" for his insubordination in refusing to provide the information Brylewski requested; (2) a "procedure reminder" for his failure to document properly the administration of Vicodin;[2] and (3) a "written reprimand" for falsification of his March 3, 2004 time sheet.  (*Id.*, Statement of Procedural and Uncontested Facts ¶¶ 27–29, Ex. Q [3/4/04 Procedure Reminder], Ex. S [3/8/04 Procedure Reminder], Ex. V [3/8/04 Written Reprimand]; *admitted at* Pl.'s 2d Resp., Resp. to Statement of Undisputed Facts ¶¶ 27–29.)  The March 8, 2004 "written reprimand" reflects that Defendant placed Plaintiff on suspension pending review of his file to determine further action.  (Def.'s 1st Br., Statement of Procedural and Uncontested Facts ¶19,

---

[2] The "procedure reminder" regarding Vicodin documentation reflects the date March 4, 2004.  (Def.'s 2d Br., Ex. Q [3/4/04 Procedure Reminder].)  The signature block on the "procedure reminder," which Plaintiff refused to sign, reflects the date March 8, 2004 and the letters "RTS."  (*Id.*)

Ex. Q [3/8/04 Written Reminder]; *admitted at* Pl.'s 1st Resp., Resp. to Statement of Undisputed

Facts ¶ 19.)  Defendant asserts that it terminated Plaintiff's employment on or about March 9,

2004.[3]  (Def.'s 1st Reply, Resp. Concerning Disputed Facts ¶ 19; Def.'s 2d Reply, Resp.

Concerning Disputed Facts ¶ 35.)  Plaintiff maintains that Defendant notified Plaintiff of his

termination during the March 8, 2004 meeting, but concedes that Defendant terminated his

employment on March 9, 2004.  (Pl.'s 1st Resp., Statement of Additional Disputed Facts ¶ 19;

Pl.'s 2d Resp., Statement of Additional Disputed Facts ¶¶ 34, 35.)

On March 8, 2004, Plaintiff filed a written grievance protesting the March 8, 2004

"procedure reminder" and "written reprimand."  (*Id.*, Statement of Procedural and Uncontested

Facts ¶ 20, Ex. R [Grievance]; *admitted at* Pl.'s 1st Resp., Resp. to Statement of Undisputed

Facts ¶ 20.)  Defendant scheduled a hearing on Plaintiff's grievance on March 12, 2004 at 8:00

a.m.  (*Id.*, Statement of Procedural and Uncontested Facts ¶ 21; *admitted at* Pl.'s 1st Resp., Resp.

to Statement of Undisputed Facts ¶ 21.)  Plaintiff, who knew of a prior conflict in his schedule,

did not appear for the hearing.  (Def.'s 2d Br., Statement of Procedural and Uncontested Facts ¶

34; *admitted at* Pl.'s 2d Resp., Resp. to Statement of Undisputed Facts ¶ 34.)  Due to Plaintiff's

absence, Defendant postponed the hearing.  (*Id.*)  Although Westmoreland offered Plaintiff an

opportunity to reschedule the hearing, Plaintiff failed to do so.  (*Id.*, Statement of Procedural and

Uncontested Facts ¶ 35; *admitted at* Pl.'s 2d Resp., Resp. to Statement of Undisputed Facts ¶

35.)

---

[3]In Defendant's reply in support of its first motion, Defendant alleges it discharged
Plaintiff on March 9, 2004.  (Def.'s 1st Reply, Resp. Concerning Additional Disputed Facts ¶ 19.)
In its reply in support of its second motion, Defendant alleges it discharged Plaintiff on March 10,
2004.  (Def.'s 2d Reply, Resp. Concerning Additional Disputed Facts ¶ 35.)

2.    *Procedural History*

On August 16, 2004, Plaintiff filed a complaint in this court, asserting a claim for discriminatory termination under USERRA.  (Compl. and Jury Demand ¶¶ 18–25 [filed Aug. 16, 2004].)  On September 15, 2004, Defendant filed an answer.  (Answer to Compl. [filed Sept. 15, 2004.)  On January 31, 2005, Defendant filed an amended answer to Plaintiff's complaint.  (Am. Answer to Compl. [filed Jan. 31, 2005].)  On February 15, 2005, Plaintiff amended his complaint in order to assert two claims for relief: (1) discriminatory termination in violation of USERRA; and (2) denial of due process in violation of section 1983.  (Am. Compl. ¶¶ 18–31.)

On March 18, 2005, Defendant filed a motion for summary judgment on Plaintiff's section 1983 claim.  (Def.'s 1st Br.)  Defendant alleges that Plaintiff cannot maintain his section 1983 claim because: (1) Defendant is not a state actor and did not act under color of state law, and (2) Plaintiff had no property interest in his employment.  (*Id.* at 5–12.)  On April 20, 2005, Plaintiff filed a response to Defendant's motion.  (Pl.'s 1st Resp.)  On May 5, 2005, Defendant filed a reply in support of its motion.  (Def.'s 1st Reply.)  This matter is fully briefed.

On April 18, 2005, Defendant filed a motion for summary judgment on all of Plaintiff's claims.  (Def.'s 2d Br.)  Defendant argues Plaintiff cannot maintain his claim: (1) for discriminatory discharge under USERRA, because he cannot establish that his military status was a motivation behind his dismissal, or if he can, Defendant can establish it had a valid nondiscriminatory reason for discharging Plaintiff; and (2) for deprivation of constitutional rights under section 1983, because he cannot establish state action or a property interest in his employment with Defendant.  (Def.'s 1st Br. 5–12; Def.'s 2d Br. 8–14.)  As an alternative to summary judgment, based on the doctrine of after-acquired evidence, Defendant moves this court

to limit damages to the period of time between Plaintiff's dismissal and the time it learned of

Plaintiff's misrepresentations on his application for employment with Defendant regarding the

circumstances of the termination of his prior employment with Denver Health and Hospitals.

(Def.'s 2d Br. at 15–16.)  On May 11, 2005, Plaintiff filed a response to Defendant's second

motion.  (Pl.'s 2d Resp.)  On June 10, 2005, Defendant filed a reply in support of its second

motion.  (Def.'s Reply Br. in Supp. of Mot. for Summ. J. on All Claims, and Alternatively, To

Limit Damages [filed June 10, 2005] [hereinafter "Def.'s 2d Reply"].)  This matter is fully briefed.

Defendant's April 18, 2005 motion expressly incorporates by reference, but does not repeat, the

arguments contained in Defendant's March 18, 2004 motion.  (Def.'s 2d Br. at 12–15.)

Accordingly, for the purposes of this Order, I consider Defendant's motions conjointly and

contemporaneously.

## ANALYSIS

### 1.    *Standard of Review*

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant

summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, show that there is no genuine issue as to any material

fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)

(2005); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Concrete Works, Inc.

v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).  The moving party bears the

initial burden of showing an absence of evidence to support the nonmoving party's case.  *Celotex

Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "Once the moving party meets this burden, the

burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material

matter." *Concrete Works*, 36 F.3d at 1518 (citing *Celotex*, 477 U.S. at 325).  The nonmoving

party may not rest solely on the allegations in the pleadings, but must instead designate "specific

facts showing that there is a genuine issue for trial."  *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P.

56(e) (2005).  A fact in dispute is "material" if it might affect the outcome of the suit under the

governing law; the dispute is "genuine" if the evidence is such that it might lead a reasonable jury

to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir.

1997) (citing *Anderson*, 477 U.S. at 248).  The court may consider only admissible evidence when

ruling on a summary judgment motion.  *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d

1467, 1474 (10th Cir. 1985).  The factual record and reasonable inferences therefrom are viewed

in the light most favorable to the party opposing summary judgment.  *Byers v. City of

Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998) (citing *Concrete Works*, 36 F.3d at 1517).

**2.      Evaluation of Claims**

    **a.      Plaintiff's USERRA Claim**

      Defendant argues that it is entitled to summary judgment on Plaintiff's claim for

discrimination under USERRA.  (Def.'s 2d Br. at 8–11.)  USERRA, enacted in 1994 to improve

the Veterans' Reemployment Rights Act, "prohibits discrimination against persons because of

their service in the uniformed services."  *Hill v. Michelin N. Am., Inc.*, 252 F.3d 307, 311 (4th

Cir. 2001) (quoting 38 U.S.C. § 4301[a][3]) (internal quotation marks omitted); *see also Gagnon

v. Sprint Corp.*, 284 F.3d 839, 852 (8th Cir. 2002), *abrogated on other grounds, Desert Palace,

Inc. v. Costa*, 539 U.S. 90 (2003); *Sheehan v. Dep't of the Navy*, 240 F.3d 1009, 1012 (Fed. Cir.

2001).  USERRA proscribes that a person's:

    membership, application for membership, service, application for service, or obligation for

> service in the uniformed services [be] a motivating factor in the employer's [adverse employment] action, unless the employer can prove that the action would have been taken in the absence of such membership, application for membership, service, application for service, or obligation for service.

*Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002) (citing 38 U.S.C. § 4311[c][1]) (other citations omitted).

Precedent interpreting and applying USERRA is sparse.  *See Sheehan*, 240 F.3d at 1013. Courts that have applied the statute have implemented the burden-shifting framework approved by the Supreme Court in *NLRB v. Transportation Management Corporation*, 462 U.S. 393, 401 (1983), to determine whether an employer discharged a reservist in violation of USERRA.  *See, e.g.*, *Coffman v. Chugach Support Servs.*, 411 F.3d 1231, 1238–39 (11th Cir. 2005); *Maxfield v. Cintas Corp. No. 2*, 427 F.3d 544, 551 (8th Cir. 2005); *Gummo v. Vill. of Depew, NY*, 75 F.3d 98, 106 (2d Cir. 1996); *Brandsasse v. City of Suffolk, Va.*, 72 F. Supp. 2d 608, 617 (D. Va. 1999).  In the absence of apposite or contrary binding authority, I look to these cases to establish the legal framework under which to evaluate Plaintiff's claims.  Accordingly, in USERRA actions, the employee bears the initial burden to show that "military status was at least a motivating or substantial factor in the agency action," upon satisfaction of which the employer must establish by a preponderance of evidence that it would have taken the action "despite the [employee's] protected status."[4]  *Coffman*, 411 F.3d at 1238–39 (citation and internal quotation marks omitted); *see Maxfield*, 427 F.3d at 551.  Courts interpret USERRA liberally in favor of service

---

[4]Unlike the burden-shifting framework presented in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), which is often applicable to statutory employment discrimination claims, "the procedural framework and evidentiary burdens set out in [USERRA] shift the burden of persuasion, as well as production, to the employer."  *Gagnon*, 284 F.3d at 854.

members. *Duarte v. Agilent Techs., Inc.*, 366 F. Supp. 2d 1039, 1045 (D. Colo. 2005). Here, Plaintiff alleges that Defendant discriminated against him because of his service in the United States Air Force Reserve when it terminated his employment. (Am. Compl. ¶¶ 18–24.) Defendant argues that Plaintiff cannot maintain his claim because: (1) he cannot establish that his military service was a motivating factor behind Defendant's decision to terminate his employment, or if he can, (2) Defendant can establish that it would have terminated Plaintiff's employment for valid reasons independent of his military service — namely, Plaintiff's accumulation of multiple disciplinary reprimands. (Def.'s 2d Br. at 8–11.)

Under USERRA, an employee must make "an initial showing . . . that military status was at least a motivating or substantial factor in the [employer's] action." *Sheehan*, 240 F.3d at 1014; *Maxfield*, 427 F.3d at 551. The "motivating factor" requirement does not suggest that an employee's protected status must have been the sole cause of the employment action. *Id.* "Indeed, military status is a motivating factor if the defendant relied on, took into account, considered, or conditioned its decision on that consideration." *Coffman*, 411 F.3d at 1238. A court may infer discriminatory motivation under USERRA from a variety of indicators, including: (1) proximity in time between the employee's military activity and the adverse employment action; (2) inconsistencies between the proffered reason and other actions of the employer; (3) an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity; and (4) disparate treatment of certain employees compared to other employees with similar work records or offenses. *Id.*; *Sheehan*, 240 F.3d at 1014. Plaintiff makes allegations with respect to three of the four prongs — inconsistencies, disparate treatment, and proximity in time — I address each in turn.

Plaintiff argues that inconsistencies between Defendant's proffered reasons and its actions support a finding of discriminatory intent. (Pl.'s 2d Resp. at 25–27.) Plaintiff testified that at the March 8, 2004 meeting, Moe terminated Plaintiff's employment and emphasized the reason for his dismissal was Plaintiff's refusal to give his Air Force Reserve unit phone number to Brylewski as requested. (Pl.'s 2d Resp., Ex. 9 at 214, 232, 371–72 [Dep. of Cloyde Lewis].) Plaintiff neither acknowledges nor cites authority for his implicit contention that he had a right of privacy or was otherwise entitled to refuse to divulge the information Brylewski requested. The link between Plaintiff's obligation to serve and Plaintiff's refusal to answer his supervisor's question is tangential at best. Indeed, Plaintiff's own testimony described above serves to demonstrate not Defendant's anti-military animus, but its anti-insubordination animus.[5] (Pl.'s 2d Resp., Ex. 9 at 214, 232, 371–72 [Dep. of Cloyde Lewis].)

Moreover, Defendant asserts that it discharged Plaintiff because he had accumulated five "procedure reminders" and two "written reprimands" in the span of one year. (Def.'s 2d Reply at 10–11, Ex. G at 93–94 [Dep. of Kent Moe].) Poignantly, Plaintiff does not dispute that Defendant issued him five "procedure reminders" and two "written reprimands," or "Plaintiff was terminated because he accumulated five ['p]rocedural [r]eminders['] . . . in one year." (Pl.'s 2d Resp., Resp. to Statement of Undisputed Facts ¶¶ 16, 17, 20, 25, 27–29, 32.) Plaintiff's argument supporting an inference of discriminatory motive progresses as follows: (1) his receipt of one "procedural reminder" arose out of his conversation with Brylewski regarding Plaintiff's

---

[5]Notably, the "written reprimand" Plaintiff received on October 2, 2003 states that Plaintiff's refusal to sign the September 29, 2003 "procedural reminder" was "insubordination," and further evidence of such insubordination might "result in suspension, demotion and/or termination." (Pl.'s 2d Resp., Ex. K [10/2/03 Written Reprimand].)

military service obligation; (2) had Plaintiff not been subject to a military obligation, the

conversation would not have taken place, Plaintiff would not have refused to answer Brylewski's

question, and Defendant would not have issued the "procedural reminder;" and (3) had Plaintiff

received only four "procedural reminders," Defendant would not have terminated his employment.

(Pl.'s 2d Resp. at 26.)  Plaintiff's wildly speculative argument is wholly unconvincing to establish

Defendant's discriminatory motive.  *See Snowman v. IMCO Recycling, Inc.*, 347 F. Supp. 2d 338,

344–45 (E.D. Tex. 2004) (subjective belief and speculation cannot establish a genuine issue of

material fact regarding discrimination under USERRA).  Speculation aside, as discussed above,

Plaintiff received the "procedural reminder" in connection with his conversation with Brylewski as

a result of his purposeful act of insubordination by refusing to give his military supervisor's

contact information, not because of his military obligation *per se*.[6]  Accordingly, I find that

Plaintiff has not raised a genuine issue of fact as to Defendant's discriminatory motives with these

purported inconsistencies.

  Further, Plaintiff alleges that he did not deservingly accumulate five "procedure

reminders," and Defendant cannot properly justify terminating his employment based thereupon,

because Defendant treated Plaintiff differently from its other employees.  (Pl.'s 2d Resp. at

27–32.)  Plaintiff argues that Defendant's other employees in the medical department at Ridge

View falsified their time sheets and failed to document properly administration of narcotics

---

[6] The "procedure reminder" also states that Plaintiff gave short notice of his intent to take leave.  (Pl.'s 2d Resp., Ex. S [3/8/04 Procedure Reminder].)  I note that Plaintiff testified he received notice of his obligation to serve and attend the drill March 5, 2004 weekend on or about February 28, 2004, but did not notify Brylewski until March 2, 2004.  (Def.'s 2d Br. Ex 9 at 185, 189 [Dep. of Cloyde Lewis].)  The parties do not argue this point, and thus I decline to do so at this juncture.

without discipline.  (*Id*. at 27–28, Ex. 10 at 69–71, 75 [Dep. of Paul Brylewski], Ex. 17 [Key

Roster], Ex. 18 [Butts Time Sheet], Ex. 19 [Freeman Time Sheet], Ex. 20 [Henry Time Sheet],

Ex. 21 [McEwen Time Sheet].)  Damningly, Plaintiff does not allege that Brylewski supervised

any of the employees who allegedly performed any of these bad deeds.  (*Id*.)  Indeed, Plaintiff fails

to specify even the identity of the employees who failed to document properly narcotic

administration.  (*Id*.)  Along similar lines, Plaintiff argues that he is the only employee with a

military commitment whom Defendant asked to provide military supervisor contact information,

but fails to offer a frame of reference in which to consider this information, instead merely

asserting he is "the only employee of Defendant who was ever written up for insubordination."

(*Id*. at 28.)  It is difficult to see how a fact-finder could infer a discriminatory motive where

Plaintiff has not established that he was similarly situated to the employees who allegedly received

better treatment than he.  *See Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir.

2004) (holding that in discrimination cases, comparators "must be nearly identical" to the plaintiff

"to prevent courts from second-guessing a reasonable decision by the employer").

Finally, Plaintiff notes that he attended and served a drill weekend from March 5, 2004

through March 7, 2004.  (Pl.'s 2d Br. at 27; Def.'s 1st Br., Statement of Procedural and

Uncontested Facts ¶ 17; *admitted at* Pl.'s 1st Resp., Resp. to Statement of Undisputed Facts ¶

17.)  Defendant suspended Plaintiff's employment on the day Plaintiff returned from military leave

— March 8, 2004 — and terminated his employment on or about March 9, 2004.[7]  (Def.'s 1st

---

[7]In his response to Defendant's first motion, Plaintiff asserts — and Defendant admits —
that Defendant terminated his employment on March 9, 2004.  (Pl.'s 1st Resp., Statement of
Disputed Facts ¶ 19; *admitted at* Def.'s 1st Reply, Resp. Concerning Disputed Facts ¶ 19.)  In his
response to Defendant's second motion, Plaintiff asserts that on March 8, 2004 Defendant
notified Plaintiff that he was discharged, and officially terminated his employment on March 9,

Br., Statement of Procedural and Uncontested Facts ¶19, Ex. Q [3/8/04 Written Reminder]; Pl.'s

1st Resp., Resp. to Statement of Undisputed Facts ¶ 19; Def.'s 1st Reply, Resp. Concerning

Disputed Facts ¶ 19.)  Thus, there is clearly a close proximity in time between Plaintiff's service

and attendance at the Air Force Reserve drill weekend and Defendant's termination of Plaintiff's

employment.

　　　Here, beyond temporal proximity, Plaintiff offers only flawed logic and vague speculation

to establish a connection between his military service and Defendant's termination of his

employment.  Plaintiff's *post hoc ergo propter hoc* argument, without more, is unconvincing and

insufficient to satisfy his burden to demonstrate that his military duties influenced Defendant's

employment decision.  *See Sanguinetti v. UPS*, 114 F. Supp. 2d 1313, 1319 (D. Fla. 2000)

(granting summary judgment on USERRA claim where "[a]side from the correlation in timing,

plaintiff offers nothing but his own speculation to establish a nexus between his military orders

and his termination"); *Cf. Maxfield*, 427 F.3d at 552 (proximity in time between service and

adverse action, employer's visit to military base while plaintiff was on leave, and employer's

inquiry to sergeant whether plaintiff was present at military base and whether plaintiff's presence

was "imperative" sufficient to establish discriminatory motive); *Harris v. City of Montgomery,*

*Ala.*, 322 F. Supp. 2d 1319, 1325 (D. Ala. 2004) (proximity in time between service and adverse

---

2004.  (Pl.'s 2d Resp. at 41, Resp. to Statement of Undisputed Facts ¶ 32.)  Further confounding
the matter, Plaintiff testified that at the end of the March 8, 2004 meeting, he understood his
status was "suspension without pay."  (*Id.*, Ex 9 at 232 [Dep. of Cloyde Lewis].)  As previously
noted, in its reply in support of its first motion, Defendant alleges it terminated Plaintiff on March
9, 2004, in its reply in support of its second, March 10, 2004.  (Def.'s 1st Reply, Resp.
Concerning Statement of Additional Disputed Facts ¶ 19; Def.'s 2d Reply, Resp. Concerning
Statement of Additional Disputed Facts ¶ 35.)  Faced with this discrepancy, I use the least
controverted termination date, March 9, 2004.

action along with employer's statement that plaintiff's military training played role in employment decision gave rise to inference of employer's discriminatory motive). Plaintiff has not raised a genuine issue of fact as to whether his military service was a substantial or motivating factor in Defendant's decision to terminate his employment. Consequently, I need not address Defendant's burden to establish legitimate independent reasons inducing its actions. Defendant is entitled to summary judgment on Plaintiff's claim for discriminatory discharge under USERRA.

   **b.   *Plaintiff's Section 1983 Claim***

   Defendant argues that it is entitled to summary judgment on Plaintiff's claim for relief under section 1983. (Def.'s 1st Br. at 5–12; Def.'s 2d Br. at 11–14.) Section 1983 provides a remedy for constitutional violations committed by state actors or by private actors under color of state law.[8] *See* 42 U.S.C.A. § 1983 (2005). To establish a violation of section 1983, Plaintiff must demonstrate that: (1) Defendant acted under color of state law to deprive him of a right, and (2) the right of which Defendant deprived him was secured by the Constitution or the laws of the United States. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999). Here, Plaintiff alleges that: (1) as the operator of a youth correctional facility under contract with a state

---

   [8]Liability under section 1983 attaches only to conduct occurring "under color of law." 42 U.S.C.A. § 1983 (2005). As such, the only proper defendants in a section 1983 claim are those who represent the state in some capacity. *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995) (citations omitted). Consequently, conduct that constitutes state action under the Constitution "necessarily constitutes conduct 'under color of law' pursuant to [s]ection 1983." *Id.* (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 935 [1982]); *see also Jensen v. Lane County*, 222 F.3d 570, 574 (9th Cir. 2000) ("The 'color of law' requirement of [section] 1983 is treated as the equivalent of the 'state action' requirement under the Constitution.") (citing *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 [1982]; *West v. Atkins*, 487 U.S. 42, 49 [1988]).

entity, Defendant acted under color of state law; and (2) by discharging him, Defendant deprived

Plaintiff of his property interest in continued employment.  Defendant argues that it did not act

under color of state law and Plaintiff had no property interest in continued employment.  (Def.'s

1st Br. at 5–12; Def.'s 2d Br. at 11–14.)

To establish that Defendant acted under color of law, Plaintiff must demonstrate that "the

alleged deprivation of constitutional rights was caused by the exercise of some right or privilege

created by the State or by a rule of conduct imposed by the State or by a person [or entity] for

whom the State is responsible." *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447

(10th Cir. 1995).  In *Gallagher*, the Tenth Circuit explained that four tests guide determination of

whether a private entity acts under color of law for the purposes of section 1983: (1) close nexus,

in which a court examines "whether there is a sufficiently close nexus between the State and the

challenged action of the regulated entity so that the action of the latter may be fairly treated as

that of the State itself;" (2) symbiotic relationship, in which a court examines the degree to which

the State has "insinuated itself into a position of interdependence" with the private entity; (3) joint

activity, in which a court will find state action where a private entity is a "a willful participant in

joint activity with the State or its agents;" and (4) public function, in which a court will find state

action where a private entity exercises "powers traditionally exclusively reserved to the State."

*Id.*  Here, Plaintiff limits his arguments to the public function test.  (Pl.'s 1st Resp. at 13–19.)

Thus, I limit my analysis in the same stride.

### *(1)      Public Function*

The public function theory "recognizes the existence of narrow circumstances where state

action arises from the exercise by a private entity of powers traditionally exclusively reserved to

the State." *Holly v. Scott*, 434 F.3d 287, 293 (4th Cir. 2006) (citations and internal quotation

mark omitted); *see Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352 (1974); *Gallagher*, 49 F.3d

at 1456.  The Tenth Circuit has held that the public function test is "difficult to satisfy," because

"[w]hile many functions have been traditionally performed by governments, very few have been

exclusively reserved to the State." *Gallagher*, 49 F.3d at 1456 (citing *Flagg Bros., Inc v. Brooks*,

436 U.S. 149, 158 [1978]) (other citations and internal quotation marks omitted).

Here, Plaintiff argues that Defendant's management and operation of a youth correctional

facility under contract with the State of Colorado satisfies the public function test.  (Pl.'s 1st

Resp. at 15–16.)  Plaintiff underscores that: (1) Defendant manages and operates Ridge View

pursuant to a contract with the Colorado Division of Youth Services; (2) Ridge View is owned by

the State of Colorado; (3) prior to their arrival at Ridge View, Ridge View students have gone

through the judicial process; and (4) Defendant supervises and monitors the Ridge View students,

who are not free to come and go as they please, twenty-four hours per day.  (*Id.*)  Plaintiff argues

that because youth correction is a function traditionally reserved to the State, Defendant acted

under color of law, and the court's inquiry should end there.  (*Id.* at 16.)  I disagree.  Plaintiff's

argument oversimplifies the law, for "[a]n entity may be a state actor for some purposes but not

for others." *George v. Pacific-CSC Work Furlough*, 91 F.3d 1227, 1230 (9th Cir. 1996).

Moreover, the "acts of . . . private contractors do not become acts of the government [purely] by

reason of their significant or even total engagement in performing public contracts."

*Rendell-Baker v. Kohn*, 457 U.S. 830, 841 (1982).

Plaintiff's argument misinterprets the nature and bounds of this court's inquiry in the

instant case.  In determining whether action took place under color of law, "courts are not

required to conduct a far-flung investigation into all of a defendant's possible activities." *Holly*, 434 F.3d at 293.  Rather, courts must focus on "'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co.*, 526 U.S. at 51 (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 [1982]).  "[T]he conduct allegedly causing the deprivation of a federal right must be fairly attributable to the State." *Gallagher*, 49 F.3d at 1447 (citation and internal quotation marks omitted).  Thus, because this case centers around Defendant's alleged failure to provide Plaintiff with due process in terminating his employment, the issue at hand is whether Defendant acted under color of state law in terminating Plaintiff's employment and purportedly denying him notice and a hearing, not in providing juvenile correctional services.  *See Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 550 (5th Cir. 2005) (in retaliatory discharge case, issue is "whether [defendant's] decisions *as an employer* are fairly attributable to the State") (emphasis in original); *George*, 91 F.3d at 1230 ("The relevant inquiry is whether [defendant's] role as an employer was state action.") (citation and internal quotation marks omitted).

Here, Plaintiff does not allege — nor does the evidence suggest — that the State of Colorado had any influence over or involvement in Defendant's employment decisions.  (Pl.'s 1st Resp. at 13–19; Pl.'s 2d Resp. at 32–36.)  Instead, Plaintiff limits his arguments to the irrelevance of such influence or involvement.  (*Id.*)  I find that Plaintiff's dismissal cannot fairly be attributed to the State, and the proper characterization of Defendant's employment decisions regarding Plaintiff is of a private actor terminating an employee, not a private actor under color of state law. Plaintiff has failed to raise a genuine issue of fact as to whether Defendant acted under color of law in terminating his employment, therefore I need not address his arguments regarding the existence and deprivation of a property interest in his employment.  Defendant is entitled to

summary judgment on Plaintiff's claim for denial of due process under section 1983.

### 3.   *Conclusions*

Based on the foregoing it is therefore ORDERED as follows:

1.   Defendant's motion for summary judgment on Plaintiff's section 1983 claim (# 38) is

GRANTED.

2.   Defendant's motion for summary judgment on all of Plaintiff's claims (# 42) is

GRANTED.

3.   Defendant's motion for limitation of damages (# 42) is DENIED as moot.

4.   The clerk shall forthwith enter judgment in favor of Defendant and against Plaintiff,

dismissing the action with prejudice.

Dated this 9th day of March, 2006.


BY THE COURT:


_____

EDWARD W. NOTTINGHAM
United States District Judge